## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Richard Rousu,

        Plaintiff,

v.

Rubbermaid Commercial
Products, LLC,

        Defendant.

**MEMORANDUM OF LAW &
ORDER**
Civil File No. 09-1987(MJD/LIB)

---

Samuel S. Rufer and Stephen F. Rufer, Pemberton Sorlie Rufer, Counsel for
Plaintiff.

Thomas J. Norby and John Paul J. Gatto, Murnane Brandt, Counsel for
Defendant.

---

## I.     INTRODUCTION

This matter is before the Court on Defendant Rubbermaid Commercial

Products, LLC's Motion for Summary Judgment [Docket No. 31].  Oral

Argument was heard Wednesday, February 9, 2010.

## II.    FACTUAL BACKGROUND

### A. Parties

Plaintiff Richard Rousu ("Rousu") is a resident of Minnesota.  Defendant

Rubbermaid Commercial Products, LLC ("Rubbermaid") is a Delaware

corporation with its principal place of business in Virginia.  This case concerns an

injury Rousu sustained when a spring fragment from a Rubbermaid mop

wringer Rousu was using snapped, flew up, and struck him in the eye.

### B.  The Injury

On January 31, 2007, Rousu was working the night shift at a Wal-Mart

store in Detroit Lakes, Minnesota.  Rousu was using a Rubbermaid mop wringer,

which was supplied by Rousu's employer.  Plaintiff testified that he was using

the mop wringer as intended.  As Rousu was wringing the mop the tension

spring in the wringer snapped, and a fragment of the spring flew up and struck

Rousu in his right eye.  Rubbermaid provided no warnings for the model of mop

wringer which Rousu was using the night he was injured.

### C.  Preservation of the Wringer

Following the incident Rousu's supervisor, Mark Rydberg retained the

spring fragment which struck Rousu.  The mop wringer was also preserved by

Rousu's supervisor following the incident.  Rousu testified that the wringer "was

right in our area" and was located "off to the side in case I ever needed it."

During this time, Rousu looked at the wringer but did not take measurements, notes, or photos of the wringer.  The wringer remained in Wal-Mart's maintenance room until sometime during March 2007, when Rousu attempted to retrieve the wringer at the request of his attorney's.  When Rousu went to retrieve the wringer it was no longer there.  Rousu asked some of his fellow employees if they knew what had happened to the wringer, but no one had any idea of what happened to it.  Rousu believes that the wringer was thrown away.

### D. Rousu's Expert James Brusso

Rousu retained an expert, James Brusso, ("Brusso") to examine the remaining spring fragment.  Brusso is a metallurgical engineer with a Ph.D. in Metallurgical Engineering from Michigan Technological University.  (Rufer Aff. Ex. B.)  During his career, he has worked as a Principal Development Engineer, a manager in an Applications Metallurgical Lab, and as a Metallurgical Engineer who has provide metallurgical consulting services for private industry, insurance companies, and attorneys.  (Id.)

Brusso's evaluation of the remaining spring fragment concluded that the spring failed due to fatigue and that the cause of the failure was a defective design.  Further, Brusso opined that the use of a looped end spring on the

wringer or the placing of a cover on the wringer would have prevented the injury in question.

Brusso testified that through the use of electron microscopy testing on the remaining spring fragment he was able to determine that the spring was not corroded, did not show signs of abuse, or abnormal wear and tear.  He identified that the root cause of the failure of the spring was not misuse, abuse, or improper maintenance.  Brusso testified that he never examined the original wringer, and that he was simply told that the "mop was functioning as normal and that there was nothing wrong with it when it failed."  Further, Brusso testified that he never modeled the incident in rendering his opinions.

Brusso testified that he did not test his alternative design of using a looped end spring on the wringer.  Brusso stated that this was a simple solution and was so obvious that no testing was required.  Brusso testified that he determined this alternative design would have worked through a visual feasibility determination, and could not find any reason it would not have worked.  He stated that the looped end spring would have contained the fragment which struck Rousu. Brusso noted that he was aware of applications where torsion springs used containment devices to prevent failed springs from becoming projectiles.  He

further stated that torsion springs with a looped end that would contain a failed

spring are available in the market.  However, Brusso also testified that he was

not aware of any mop wringers which incorporated this proposed alternate

design.  Further, Brusso stated that although the literature which he consulted in

coming to his opinion discusses looped end springs, they did not discuss or

recommend the use of a looped end spring on mop wringers.

Additionally, Brusso testified that a containment cover should have been

used on this wringer in order to control the direction of a failed spring.  Brusso's

report stated that although the cover would not have prevented the failure, it

would have prevented the spring from becoming a dangerous projectile.  Brusso

stated that he did not test whether a containment cover would have prevented

the injury, nor was he aware of any mop wringer which incorporated such a

cover at the time he made his report.  Brusso also stated that he did not read any

literature recommending use of a containment cover on a mop wringer.

Brusso further testified that he was not giving any opinions concerning

Rousu's failure to warn claims or breach of warranty claims.  Brusso's opinion

was limited to the fact that he believed the wringer was defectively designed.

Brusso did however testify that it is a designer's obligation to make a product

safe, ensure that when the product fails it fails in a safe manner, and if it is

impossible to provide proper guarding for a product then a designer must

provide appropriate directions and warnings.

### E.  Procedural Background

On July 30, 2009 Rousu filed a Complaint in this Court.  [Docket No. 1]

Rousu originally brought his claims against Newell Rubbermaid, Inc., however,

Newell Rubbermaid was not the appropriate manufacturer of the product.  The

parties stipulated that Newell Rubbermaid, Inc. would be dismissed without

prejudice and that the Complaint would be amended to name Rubbermaid

Commercial Products, LLC as the only defendant. [Docket Nos. 10-11, 13-14]

Rousu's Amended Complaint alleges Count I: Negligence, Count II: Strict

Liability, and Count III: Breach of Express and Implied Warranties.  The matter is

before the Court on Defendant's Motion for Summary Judgment. [Docket No. 31]

## III.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment is only appropriate when "there is no dispute of fact and

where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994) (citation omitted).

     "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted. (Id.)  "[I]n ruling on a motion

for summary judgment, the nonmoving party's evidence 'is to be believed, and

all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

### B.  Federal Rule of Evidence 702 & Daubert Factors Applied to Brusso

     Generally, all relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant

evidence is "evidence having any tendency to make the existence of any fact that

is of consequence to the determination of the action more or less probable than it

would be without the evidence."  Fed. R. Evid. 401.

Federal Rule of Evidence 702 governs the admissibility of expert

testimony, and states:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by firsthand knowledge, skill,
> experience, training, or education, may testify thereto in the form of
> opinion or otherwise; if (1) the testimony is based upon sufficient
> fact or data, (2) the testimony is the product of reliable principles
> and methods, and (3) the witness has applied the principles and
> method reliably to the facts of the case.

The Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993), held that district courts act as gatekeepers with regard to the

admissibility of expert testimony.  Id. at 592-93.  Among the factors that the

Supreme Court identified for district courts to use in determining the

admissibility of expert testimony include, "whether the theory or technique is

subject to testing, whether it has been tested, whether it has been subjected to

peer review and publication, whether there is a high known or potential error

rate associated with it, and whether it is generally accepted in the relevant

community."  Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005)

(citing Daubert, 509 U.S. at 593-94).  Later cases have put forth additional factors

for district courts to consider, including "whether the expertise was developed

for litigation or naturally flowed from the expert's research."  Wagner v. Hesston

8

Corp., 450 F.3d 756, 758 (8th Cir. 2006) (citation omitted).   The above stated

factors are not exhaustive however, and district courts have great flexibility to

use the factors to determine the reliability of expert testimony in a particular

case.  Presley v. Lakewood Eng'g & Mfg. Corp., 553 F.3d 638, 643 (8th Cir. 2009).

The burden of proving an expert's admissibility is on the proponent of the

testimony.  Wagner, 450 F.3d at 758.

When expert testimony constitutes "unabashed speculation," unsupported

by the record, the Court does not abuse its discretion by excluding it.  Jaurequi v.

Carter Mfg. Co., Inc., 173 F.3d 1076, 1084 (8th Cir. 1999).  See also Weisgram v.

Marley Co., 169 F.3d 514, 519 (8th Cir. 1999) (holding that district court abused its

discretion by permitting expert "to speculate before the jury . . . by relying on

inferences that have absolutely no record support").

> As a general rule, the factual basis of an expert opinion goes to the
> credibility of the testimony, not the admissibility, and it is up to the
> opposing party to examine the factual basis for the opinion in cross-
> examination.  Only if the expert's opinion is so fundamentally
> unsupported that it can offer no assistance to the jury must such
> testimony be excluded.

Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting Hose v.

Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1996)).

Rubbermaid argues that under the above stated case law, Brusso's testimony should be excluded. Rubbermaid does not question Brusso's qualifications, but rather argues that Brusso's testimony is unreliable and therefore inadmissible because it fails to meet the <u>Daubert</u> elements. For the reasons articulated below, the Court finds that Brusso's testimony is sufficiently reliable to satisfy Rule 702.

### 1.    Testing of Alternative Design

Rubbermaid argues that Brusso's alternative designs for the product in question were never tested, and therefore his testimony is unreliable. Plaintiff's expert Brusso opined that replacing the spring used in the mop wringer with a looped end spring would have prevented the spring fragment from ejecting, and would have prevented Plaintiff's injury.

In order for an expert's testimony to be admissible, an expert need not manufacture a new device, they need only demonstrate that the alternative design would protect the operator of the product and would not interfere with the utility of the product. <u>Unrein</u>, 394 F.3d at 1012. Further, expert testimony can be admissible without testing, if the expert's proposed alternative design is in service in the market. <u>Keller v. CNH America, LLC</u>, No. 07-1648, 2009 WL

1766695, at *5 (D. Minn. June 22, 2009) (finding that despite the failure to test the alternative design, the expert's testimony was admissible because other machines of the same type at question in the litigation had been manufactured using a mechanism similar to the one which the expert proposed); see also Winters v. Fru-Con Inc., 498 F.3d 734, 742 (7th Cir. 2007) (declining to require alternative design testing as an "absolute prerequisite to the admission of expert testimony" because the Daubert inquiry is meant to be a "flexible inquiry").

The alternative design that Brusso suggests, a looped end spring, is already manufactured, is available in the marketplace, and is in use on other products. Although Brusso did not test his alternative design on a mop wringer, he was aware of the use of looped end springs to contain spring fragments in other products. Furthermore, Brusso did a visual feasibility study, and determined that his alternative design would have prevented the injury. Given that the proposed alternative design exists in the marketplace, and Brusso's familiarity with other products which used the proposed alternative design, the Court finds that Brusso's lack of testing does not make his testimony unreliable.

### 2.   Peer-Review of Brusso's Alternative Design

Rubbermaid also argues that Brusso's opinion fails to meet the <u>Daubert</u> standards, because he could not identify any literature which discussed the use of his alternative designs in relation to a mop wringer for the purpose of preventing springs from ejecting from the apparatus.

Publication in a peer reviewed publication is not to be a dispositive consideration.  <u>Daubert</u>, 509 U.S. at 593.  The <u>Daubert</u> factors are flexible, and their ultimate purpose is to ensure reliable and relevant expert testimony. Although Brusso was not able to identify any literature which discussed the use of his alternative designs specifically on a mop wringer, this does not mean that his testimony is therefore unreliable.  As stated above, the alternative design exists in the marketplace and is used by other companies in other applications. Furthermore, Brusso was able to identify several treatises and publications which discussed looped end springs and the methodology for arriving at the alternative design came from a learned treatise, the ASM Handbook.  Accordingly, the Court finds that the fact that Plaintiff's expert was not able to identify literature which specifically discussed the use of a looped end spring on a mop wringer does not render his opinion unreliable, given that the product is available in the

marketplace and is used on other products to address the same safety concerns that are at issue in this case.

### 3.   General Acceptance of Brusso's Alternative Design

Rubbermaid contends that Brusso's alternative design is not generally accepted in the relevant community because Brusso stated that he was not aware of any of his alternative designs being incorporated into a mop wringer. However, Brusso's alternative design comes from a generally accepted design theory, his alternative design uses components readily available and used in the market, and his alternative design uses a component which is discussed in learned treatises.  For these reasons, the Court finds that Brusso's alternative design theory is generally accepted in the industry.

Ultimately, Brusso's testimony meets the standards set forth in Rule 702, and should be allowed. Brusso is a metallurgical engineer qualified to testify about the failure of the spring in question.  Furthermore, for the reasons articulated above, his testimony concerning his alternative design is reliable because it uses a product available in the marketplace, which is used in other products, to address the safety concerns which are at issue in this case.

### C.  Defective Design Claims

Under Minnesota law cases where a design defect is involved, Minnesota law merges the theories of strict liability, negligence, and breach of implied warranty of merchantability into a single theory of strict liability.  Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 622-23 (Minn. 1984).  To survive summary judgment, the plaintiff in a defective design case must establish a genuine dispute of material fact as to each of the three elements of a strict liability claim: (1) that the subject product was in a defective condition unreasonably dangerous for its intended use; (2) that the alleged defect existed when it left the defendant's control; and (3) that the alleged defect was the proximate cause of the injury sustained.  Id. at n. 3.  Rubbermaid argues that Rousu cannot establish the first or third elements.

### 1.    Requirement of Expert Testimony

Minnesota case law does not require expert testimony to determine that a product was defective "where the acts or omissions complained of are within the general knowledge and experience of lay persons."  Mozes v. Medtronic, Inc., 14 F. Supp. 2d 1124, 1128 (D. Minn. 1998) (citing Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co., 366 N.W.2d 271, 279 (Minn. 1985)).  However, if "it would be

speculative" for the fact finder to determine the issue of design defect without

expert testimony, then expert testimony is required.  Id. (citation omitted)

Rubbermaid argues that issues concerning the causation of the incident

and available design choices are generally not within the general knowledge and

experience of lay persons, and as such expert testimony is required in this case.

Rubbermaid asserts that because it believes Brusso's testimony should not be

admitted, Rousu cannot establish that the mop wringer was defectively designed

or that this defect caused Rousu's injury.  As articulated above, there is expert

testimony in this case through the testimony of James Brusso.

## 2.   Requirement of Alternative Feasible Design

"To establish a prima facie case that [the product] was unreasonably

dangerous normally requires production of evidence of the existence of a

feasible, alternative safer design."  Kallio v. Ford Motor Co., 407 N.W.2d 92, 96

(Minn. 1987).  Evidence of a safer alternative design is not necessary, in rare cases

where the product is judged to be so unreasonably dangerous that it should be

taken off the market as opposed to redesigned.  Id. at 97 n.8.

Rousu does not argue that the product was so unreasonably dangerous

that it should be taken off the market.  Accordingly, to survive summary

judgment on his design defect claims, Rousu must produce evidence of a feasible, alternative design.  Since the Court has found Brusso's testimony reliable, Rousu has presented such evidence.  Furthermore, through Brusso's testimony, Rousu has presented evidence that the spring in question failed because of a design defect.  Consequently, the Court finds that there are genuine disputes of material fact concerning whether the mop wringer was defectively designed, as well as whether the alleged defect was the proximate cause of Rousu's injury, and thus it would be inappropriate to grant Rubbermaid's motion with regard to Rousu's design defect claims or Rousu's breach of implied warranty of merchantability claim.

### D. Failure to Warn

Failure to warn cases under Minnesota law are based on a concept of negligence.  <u>Hammes v. Yamaha Motor Corp. U.S.A., Inc.</u>, No. 03-6456, 2006 WL 1195907, at *10 (D. Minn. May 4, 2006) (citing <u>Bilotta</u>, 346 N.W.2d 616, 623).  In order to prevail on a failure to warn claim, a plaintiff must show that "(1) the defendants had reason to know of the dangers of using the product; (2) the warnings fell short of those reasonably required, breaching the duty of care; and (3) the lack of an adequate warning caused the plaintiff's injuries."  <u>Tuttle v.</u>

Lorillard Tobacco Co., 377 F.3d 917, 924 (8th Cir. 2004) (citing Erickson v. Am. Honda Motor Co., 455 N.W.2d 74, 77-79 (Minn. Ct. App. 1990) (quotations omitted).

"Whether a duty to warn exists is dependent on the resulting injury's foreseeability." Westbrock v. Marshalltown Mfg. Co., 473 N.W.2d 352, 358 (Minn. Ct. App. 1991) (citing Balder v. Haley, 399 N.W.2d 77, 81 (Minn. 1987)). "The question of whether a legal duty to warn exists is a question of law for the court." Harmon Contract Glazing, Inc. v. Libby-Owens-Ford Co., 493 N.W.2d 146, 151 (Minn. Ct. App. 1992). However, "if there is a specific factual dispute concerning a manufacturer's awareness of a risk" the issue should be submitted to the jury. Huber v. Niagara Mach. And Tool Works, 430 N.W.2d 465, 467 (Minn. 1988). Further, a claim of negligence based on failure to warn requires that the user of the product "read and relied on the warning." Lindsay v. St. Olaf College, No. A06-2461, 2008 WL 223661, at *5 (Minn. Ct. App. Jan. 29, 2008) (citation omitted).

### 1.    Reason to Know of the Dangers of the Product

Rubbermaid argues that expert testimony is necessary for Rousu's failure to warn claim, because this claim rests upon whether Rubbermaid knew or

should have known about the defect in their product, which would make

Rousu's injury foreseeable.  Rubbermaid contends that without Brusso's expert

testimony Rousu cannot show that Rubbermaid knew or should have known

that the product was defective, and thus Rousu's failure to warn claim should be

dismissed.  As discussed above, Brusso's testimony is admissible, and there is a

genuine dispute of material fact on whether the mop wringer was defectively

designed.  Rubbermaid does not contend that if the product was defective it had

no knowledge of the defect, rather, Rubbermaid simply argues that Rousu

cannot show that the product was defective because of the lack of expert

testimony.  Thus, there is a factual dispute about Rubbermaid's awareness of the

risk.  Accordingly, the Court will leave close foreseeability questions to the jury.

Hammes, 2006 WL 1195907, at *11.

## 2.   Breach of Duty

Rubbermaid does not assert that if a duty to warn exists it did not breach

its duty, rather Rubbermaid argues that Rousu cannot establish a defective

design or causation with relation to his failure to warn claim.  Accordingly, the

Court determines that the element of breach of duty has been adequately pled to

survive summary judgment.

### 3.   Causation

Rubbermaid argues that the failure to warn claim should be dismissed because Rousu has failed to identify any inadequate warnings and thus cannot establish causation.  However, in this case Rubbermaid supplied no warnings at all.  Rousu cannot identify inadequate warnings when no warnings were provided.  Furthermore, Rubbermaid asserts that Rousu's claim should be dismissed because Rousu has not presented any evidence that he would have heeded any warning given, and thus cannot establish causation for his failure to warn claim.  For the same reason that Rousu cannot identify non-existent warnings, Rousu cannot read and follow a warning which did not exist. Additionally, the Court has already determined that genuine disputes of fact exist with regard to the issue of whether the wringer was defective and whether Rousu's injury was caused by the alleged defect.  Accordingly, the Court will not grant summary judgment on Rousu's failure to warn claim.

### E.  Express Warranty

Minnesota law states that an express warranty arises when a selling party makes an affirmation about a product which becomes part of the basis for the bargain.  Minn. Stat. § 336.2-313.  "To establish a warranty claim the plaintiff

must basically prove: the existence of a warranty, a breach, and a causal link

between the breach and the alleged harm." <u>Peterson v. Bendix Home Sys., Inc.,</u>

318 N.W.2d 50, 52-53 (Minn. 1982).

Rousu has not identified any express warranty or provided any evidence

to show that any express warranty was breached.  Furthermore, Rousu makes no

argument in his brief concerning any express warranty made by Rubbermaid.

Thus, the Court finds that Rousu has abandoned his claim of a breach of express

warranties in Count III of the Amended Complaint, Breach of Express and

Implied Warranties.  Thus, to the extent Count III of the Amended Complaint

makes a claim for breach of express warranty that claim is dismissed.

### F.  Implied Warranty for a Particular Purpose

> Where the seller at the time of contracting has reason to know any
> particular purpose for which the goods are required and that the
> buyer is relying on the seller's skill or judgment to select or furnish
> suitable goods, there is unless excluded or modified under the next
> section an implied warranty that the goods shall be fit for such
> purpose.

Minn. Stat. Ann. § 336.2-315 (West 2010).  "Under this section the buyer need not

bring home to the seller actual knowledge of the particular purpose for which the

goods are intended…, if the circumstances are such that the seller has reason to

realize the purpose intended…."  U.C.C. comment to <u>Id</u>. ¶1.  "The buyer, of

course, must actually be relying on the seller." <u>Id.</u>  The implied warranty of
fitness for a particular purpose is not merged in design defect cases.  <u>Piotrowski
v. Southworth Prods. Corp.</u>, 15 F.3d 748, 751 (8th Cir. 1994).

Rubbermaid contends that Rousu's claim must fail because Rousu has not
developed any facts which show that either Rousu or Rousu's employer relied on
Rubbermaid's skill or judgment in determining which mop wringer was best
suited for the particular purpose the wringer was to be used.  Furthermore,
Rubbermaid suggests that there is no evidence that Rubbermaid had any contact
with Rousu or Wal-Mart to discuss any particular purpose for which the mop
wringer was to be used.  The Court agrees with Rubbermaid's arguments

Rousu contends that in selling this mop wringer to Wal-Mart it would
have known the particular purpose for which the wringer was required, i.e. high-
volume commercial application, and that Wal-Mart certainly would have relied
on Rubbermaid's judgment to determine the correct product.  Rousu argues that
since this product suffered a catastrophic failure resulting from fatigue and there
were no signs of misuse it is clear that the product was not suitable for the
intended use.  Although there are disputes of fact concerning whether the

wringer in question was defectively designed, Rousu has not established a prima facie case of breach of implied warranty for a particular purpose.

Even if an inference is drawn that Rubbermaid knew what Wal-Mart's particular purpose was for the mop wringer, Rousu has not established any evidence which shows that Wal-Mart relied upon Rubbermaid's judgment in determining which mop wringer was appropriate.  Thus, Rousu has failed to establish an essential element of a claim for breach of implied warranty of fitness for a particular purpose, and this claim will be dismissed.

### G. Spoliation Sanctions

"Spoliation is the destruction of evidence."  Wajda v. Kingsbury, 652 N.W.2d 856, 860 (Minn. Ct. App. 2002) (citation omitted).  "The district court has broad authority to determine what, if any, sanction is to be imposed for spoliation of evidence."  Id. (citation omitted).  In Minnesota, the spoliation need not be in intentional to justify sanctions.  Id. at 862.  "Sanction for spoliation may be appropriate when a person knows or should have known that the evidence she destroyed was relevant to pending or future litigation."  Yath v. Fairview Clinics, N.P., 767 N.W.2d 34, 41 (Minn. Ct. App. 2009) (citing Patton v. Newmar Corp., 538 N.W.2d 116, 118-19 (Minn. 1995).  "When determining whether

sanctions are appropriate, the Court must determine the relevancy of the evidence destroyed and whether the destruction prejudiced the opposing party." Lord v. Nissan Motor Co. Ltd, No. Civ.03-3218 PAM/JSM, 2004 WL 2905323, at *2 (D. Minn. Dec. 13, 2004). "The preservation of an allegedly defective product is highly important in both proving and defending against product liability actions." Id.

Since the wringer was not preserved, Rubbermaid argues that they are prejudiced because they must rely solely on Rousu's description of the accident. Further, without the wringer in question, Rubbermaid contends that there is no way of determining whether the failed spring was the original spring or a replacement. Additionally, Rubbermaid argues that because the mop wringer was not preserved, Rubbermaid is forced to evaluate Brusso's opinions without being able to examine the wringer itself. Notably, Rubbermaid states that without the original wringer they cannot challenge Brusso's claim that misuse, abuse, or improper use did not cause the spring failure.

The Court finds that spoliation sanctions are not appropriate in this case. Initially, the Court notes that it was Wal-Mart, and not Rousu which disposed of the wringer in question. Rousu was never in the exclusive control and

possession of the wringer, as it was merely set aside at the Wal-Mart store.  In this context, the Court does not find granting sanctions appropriate, because it was not through Rousu's actions that the wringer was disposed of.  Furthermore, the Court finds that with regard to the existing spring fragment, Rubbermaid is only prejudiced because they have chosen not to examine the fragment. Rubbermaid could examine the remaining fragment to determine where the spring failed and whether the spring is the original.  Thus, the Court will not grant spoliation sanctions in this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Rubbermaid Commercial Products, LLC's Motion for Summary Judgment [Docket No. 31] is **GRANTED IN PART** and **DENIED IN PART** as set forth in this memorandum.

   a. Count I – Negligence remains as to failure to warn claims;

   b. Count II- Strict Liability remains as to design defect claims;

   c. Count III- Breach of Express and Implied Warranties remains only as to breach of implied warranty of merchantability claim.


Date:  March 14, 2011                              s/ Michael J. Davis_____
                                                   Michael J. Davis
                                                   Chief Judge
                                                   United States District Court